Mr. Graf, you've got 12 minutes, but you reserve 5 for rebuttal, is that right? Yes, Your Honor. Okay, we'll just get a second here, and then the defendants are dividing up in a complicated way, so we'll talk about that once they get up there. So with that, you may proceed, Mr. Graf. May it please the court, my name is Austin Graf from the Shell Law Firm, and I represent the plaintiff's appellants in this appeal. There is no dispute that the plaintiffs were suspended without pay for not taking a COVID-19 vaccine. The suspensions without pay occurred before accommodation requests were finally determined for those who sought accommodations. But there were some plaintiffs who did not even file for accommodations, and were never actually heard, before their constitutional right to property and their pay was violated, as described in this court's decisions in Tooley, Waronker, and O'Connor. The district court held that the Department of Education provided the plaintiffs with adequate due process before the plaintiffs were deprived of their constitutional right to pay. But the due process provided was a sham. Some of the plaintiffs had their accommodation requests heard and denied, while others could not apply for accommodations because of the limited time granted to them in the illegal Scheinman arbitrations. So, Mr. Graf, it seems to me that these sham arguments were really made for the first time in your reply brief. The opening brief is really focused on a very different set of arguments and concerns. Am I wrong about that? You're not wrong. Okay. But it's in response to the arguments made by the Department of Education and the issues regarding information that were received after the motion was finally submitted, including the deposition of one of the city's witnesses in a separate case. But ordinarily, I mean, if an argument that is raised for the first time in a reply is deemed waived, we don't consider it. Are you aware of that? I'm aware, and I'd ask the court to consider it, considering that the fact that the whole issue is whether the due process was valid and granted in accordance with the constitutional minimum as required under the U.S. Constitution. But am I right that that goes back a step to what was part of the arbitration award to which the union basically agreed? And so how do you get to a due process violation from something that was the subject of negotiation and then arbitration? Because the arbitration under New York Civil Service Law, Section 209.3F, was illegal. Well, but isn't that a state law claim that you would have to litigate in the state first before you could say that it resulted in a violation of due process? Help me out. Okay, so the state law claim about the arbitration, the city's argument is that there was a condition of employment imposed through the vaccine mandate. Under New York's civil service law, the only way a condition of employment can be imposed is through negotiations between the public union and the public employer. Under New York state law, the school districts cannot agree to arbitration. Because, and it's cited by PERB a number of times, including the New York Court of Appeals. And we're not trying to challenge the arbitration award. We're not challenging it. But it's an example of the collusion between the city and the unions with respect to how the COVID vaccine was implemented. But I'm still trying to get to your federal due process claim. Unless that arbitration was illegal, then the processes that it provided for wouldn't be unconstitutional or am I missing something? If the process was straightforward and everyone had a chance to be heard, that would be true. But not everyone had an opportunity to be heard. In the arbitration? In the due process process coming from the arbitration. No, but I mean, we're talking about the arbitration itself. Didn't everybody have an opportunity to present their views in the arbitration if they wanted to? The employees were represented by their union. Right. So the union was representing the employees and that was the way it was organized. So why wasn't that sufficient, at least for due process purposes, in connection with the arbitration? Because the process by which the arbitration was, the Scheinman arbitration set up a system- Yeah. That gave between the time the arbitration was awarded, I believe September 10th, and the end date for the final decision on appeal by the Scheinman group was 15 days. So there were a significant amount of people who did not have the opportunity because the time frame was so tight. But that was what was the result of the arbitration, right? So your complaint is with what the net result of the arbitration was. Yes, but the- And how does that come before our court? Don't you need a New York ruling that the arbitration was invalid or void or whatever before you can claim that the processes that it provided deprived your client of constitutional due process? In other words, at best, wouldn't you have had to have brought a hybrid breach of the duty of fair representation, contract violation action? The problem is that the due process that was included in the arbitration award did not give the teachers an opportunity to be heard. Yes, but that's an attack on the arbitration award, not a due process claim. It's an attack on the arbitration award, or am I overlooking something? It is an attack on the process by which the arbitration award was implemented. How is that a federal claim? Because in order to suspend the plaintiffs without pay, there had to be a condition of employment under New York state law. Right, that's a state law claim. It's not nothing in federal law gives you that right. State law gives you that right. Yes. But that claim's not before us unless, as I said, I'm overlooking something. It's the process by which the, I mean, I don't think you're overlooking it, but I think you're taking a narrow point of view with respect to not seeing that we, that the plaintiffs did not have the opportunity to be heard because of the process. Is what you want us to say, the state arbitration violated state law, and therefore the processes that it approved are violative of the Constitution? Yes. How do we decide the state law question? What's the claim that allows us to say the arbitration violated state law? Because the only way the city can say that they can suspend without due process is if they follow, if they create a condition of employment. That's their whole argument is that it was a condition of employment. How they got there is through the arbitration awards, and the arbitration awards did not grant the plaintiffs the due process that they were entitled to. It did not give them the time. It was all predetermined. The process itself, and then you have, and I know I'm over time and I apologize, you have cases where the Article 78, CPLR Article 78 was not sufficient. In New York City, I'm sorry, in Hellenic American Neighborhood Action Committee, this court held that there had to be due process before there was a deprivation of rights. And Article 78 does not give that, and that's what you're saying that we had to do. We didn't have to do Article 78 because the due process given to the plaintiffs should have been done before their property rights in their pay was deprived. All right, well you've reserved five minutes for rebuttals. Thank you. Thank you, Mr. Graf. We'll now hear from Ms. Moon for six minutes. Is that right? Correct. Okay. Ms. Moon, you may proceed. Thank you. Good morning, and may it please the court. Chloe Moon on behalf of the city appellees. Plaintiffs' attempt to bring state law claims masquerading as procedural due process claims should be rejected, but plaintiffs were provided constitutionally adequate process, and their state law claims, even if they had been pleaded, would fail in any event, this court should affirm. On the procedural due process grounds, they had adequate notice and opportunity to be heard. They had notice in the August 24th implementation of the vaccine mandate that was highly publicized, and the awards themselves that were September 10th, September 15th, and October 3rd provided that notice. As to the pre-deprivation opportunity to be heard that we've heard a lot about this morning already, they had the ability through the arbitration award procedures to submit proof of their vaccination status, and they also were provided an expedited process to apply for an exemption and appeal that determination. They also had post-deprivation process through Article 78 proceedings. Well, I mean, all of that is what the district court found, basically, and that's pretty straightforward. Yes, Your Honor. And the reply is when Mr. Graf starts, I think, making more pointed arguments to that process and suggesting it's a sham, and I guess you didn't get to respond to the reply, but now you do. So what's your response? Yes, Your Honor. I think as the colloquy yourself made clear, we do think that's waived because they brought it up for the first time in reply, but in any event, that's a state law claim. That's not a procedural due process claim. The challenge to the arbitration award itself would be state law. But as a second point, I'd also like to make clear that there's no— It was deficient. It was a sham when they actually tried to take advantage of it. Was that argument ever advanced in the district court as a reason to allow the case to go forward? Not that I'm aware of, and there's no requirement that a post-deprivation process be an easy path to success. But not easy. I mean, I guess a sham. It can't be a sham, right? Yes, but certainly there was— I imagine you would dispute that it's a sham. But if it wasn't vetted below, we don't have much basis to know whether it's a sham or not. Absolutely, Your Honor. And I would just point to the fact that one of the plaintiffs in this very case was able to succeed in Article 78 proceeding. So, you know, without that ability to have discussed this claim below, we don't really have the opportunity to respond to that. But, I mean, we do contest that it is a sham, and we do say that post-deprivation procedural process does not need to be 100% successful for it to be a process that is available and that satisfies constitutionally minimum. Are you talking about Article 78 at this point? An Article 78 proceeding? Yes, Your Honor. Because the opportunity to go to court for an Article 78 proceeding is usually sufficient for post-deprivation process, right? Yes, Your Honor. Yes, Your Honor. So we'd just like to finally reiterate that violations of state law do not establish procedural due process violations. And on their state law claims, plaintiffs lack standing to challenge those because of the union's agreements in all three of these situations, as I'm sure my colleagues will note. And there's near universal agreement that the vaccine requirement is a lawful condition of employment, and that we have Clark and O'Reilly state law cases for these state law claims that say that. So if this Court has no further questions, we ask this Court to affirm. Thank you very much, Ms. Moon. Thank you so much. We'll now hear from Ms. Kolker. Am I pronouncing that right? Yes. Ms. Kolker, you have two minutes. May it please the Court, Dean O'Kolker for the United Federation of Teachers and the Council of School Supervisors and Administrators, as well as their respective presidents who were defendants in this case. I'm just going to touch on two things that were mentioned because I don't think I need to repeat what Ms. Moon said. One is that this notion that the unions have to and have an obligation to negotiate conditions of employment and they cannot be imposed absent collective bargaining. As much as my clients wish that was the case, that is in fact not the case. The vaccine mandate was issued as an order of the city health department and not something that the unions were able to negotiate over, and there are decisions cited in the papers to that effect. What the unions were able to negotiate was pay and personnel policies that would implement that mandate. The notion that these individuals could not have been excluded from the schools, which is what the mandate required, absent this arbitration award, or placed on some sort of leave, specifically an unpaid leave, absent this arbitration award, is not actually correct. And there are cases where other workforces within the city face leave without pay and exclusion from their work environment without having engaged in arbitration, bargaining, or coming to any agreement. What the award did was give these individuals more procedural rights than they otherwise had and more options than they otherwise had. It allowed them to not only apply for an accommodation to their employer, but to have a right to appeal the decision of that employer through an expedited arbitration process with an independent arbitrator. The normal step would be go straight to court. This added an additional informal step in the process before they had an opportunity to go to court. It also allowed individuals who either chose not to apply for an accommodation or were denied an accommodation to go on an extended leave, maintain their health insurance for a year, to either see if the mandate would be lifted or if they would become vaccinated at a later time, and an immediate right to return if they became vaccinated at a later time. All rights they did not have absent this arbitration award. So the arbitration award did not limit or restrict existing due process that these individuals had. It added process that they were entitled to and added options. And while I agree with Ms. Moon that the arguments raised in reply have been waived, the idea that the basis of the argument that these procedures are shams is one, what about the people who didn't engage in the process at all? They had no place to go. Well, they had options and they didn't engage in the process. That's not a lack of process. That's a lack of engagement in the process. I mean, it sounded like Mr. Graf was suggesting that there was insufficient time. In other words, notice was inadequate because it was too short. There was a time factor to this process because the mandate was issued by the health department at the end of August. And of course, school had to start. We are not talking about individuals working in an office where the same work is done all year round. The goal of the mandate was to get kids back into public school. And so everyone had to take account of the staffing needs in order for school to start. So the initial timelines were short, but the unions and the employer put out information, put out explanations, provided services and assistance in the application process. And while the process was contemplated to be reasonably short, the award itself allows the hearing officers to extend the time if people requested extensions of time to put in additional information. And the reality is, it's the largest school district in the country. It employs something like 80,000 educators. These procedures were not done in the timeframes that were aspirational in the award because there were simply too many of them. And they continued for some time. At the time, did the time periods vary between the unions depending on which union was involved? I thought that there was something in the briefs about that. Yes. Some of them were longer and some of them were shorter. The three unions. Yes. Yes, Your Honor. The UFT's arbitration award was determined first. I believe it was September 10th. The CSA award followed several days after that one. And I believe the DC 37 agreement, which was not an award, it was a collectively bargained agreement, which my colleague could speak to more directly, happened a little bit later. Each of them had different, you know, had processes and timelines that stemmed from when the awards came down. Was the same timeline generated by each award? That is the period within which you could take action if you were a teacher? I believe they were comparable. But of course the awards came down. Comparable and varied. The times in which they became effective varied. Yes. Yes, because the awards were issued at slightly different times. But the overall goal was to do these within a reasonably quick time at the start of the school year because, of course, you needed to staff school to supervise students. And it was not a time where if several of the teachers were not there that day, you could herd everybody into an auditorium and have them all supervised by one staff member because we were still undergoing all the effects of COVID and they were trying to keep the classrooms separately. Did your point then that any one of these teachers, anybody who objected based upon some reason that would permit them to, in effect, avoid the vaccine, had a chance to make their application if they wanted to? Because it would be a very simple application, presumably. Yes, Your Honor. And again, to the extent people felt like they couldn't put together all the supporting information within that period of time, there was an opportunity to address that to the hearing officers and say, I need an extra week. I need an extra few days to do this. And the award contemplates the hearing officers allowing for that, asking for additional material within the process. I see that my time is up. OK. Way up, Ms. Culker. You were like five minutes over. Sorry. But Ms. Moon was short. So I figure no harm done. OK. Thank you very much. Thank you. We'll now hear from Ms. Medina for three minutes. Good morning, Your Honors. May it please the Court. I have the name Medina from Vigarito Barker, Patterson, Nicholas, and Porter on behalf of the court. I'm sorry. Ms. Medina, would you mind keeping your voice up or pulling those microphones a little closer to you? Yes. You can do that. Thank you. On behalf of the Scheinman Defendant Appellees, the two issues really pertain to my clients, and that is whether the Scheinman defendants or Mr. Arbitrator Scheinman had or acted within his authority to arbitrate the impasse. And under the civil service law, the board had the authority to appoint an arbitrator in the event of an impasse. And in this case, we have a declaration of an impasse after the union defendants and the city entertained negotiations in trying to address the challenges to the vaccine mandate. Mr. Arbitrator Scheinman was appointed as arbitrator, and he acted within his authority as an appointed administrator. He had absolutely statutory authority. And the parties, after submitting to mediation, ultimately agreed to submit to binding arbitration. This was done voluntarily, and Arbitrator Scheinman presided over the arbitration and rightfully issued an arbitration order. I don't know if we need to go here, but I guess the argument being made by Mr. Graf, at least in his opening brief, is that section 209.3F doesn't even permit the city to engage in arbitration like this. You disagree with his interpretation of the statute, I presume? We submit that it is incorrect, because actually section 209.3E provides that school districts are not obligated to engage or to conduct public hearings on factual determinations. So the cited section 209.3F, which relates to issuing of or undergoing factual determinations, has a carve-out for school districts, and therefore the section that he's citing does not apply. The board here was permitted or had authority to appoint an arbitrator, and they did. And following that, the district, the city, and the unions entered into a voluntary agreement, which they had the authority to do. Can you tell me how you understand the claim against Scheinman to raise a question for this court? It does not. The amended complaint, which is where the Scheinman defendants were initially named, does not assert any viable cause of action against the Scheinman defendants. First of all, there is arbitral immunity. The Scheinman defendants acted within the scope of their role as arbitrator in issuing the arbitration award, and therefore arbitral immunity bars any claims here to begin with, which renders any allegations in the amended complaint failing to state a cause of action. So your argument that he had the authority is secondary to your argument that there is no question before this court about his authority? I just want to be sure I understand your position. I believe they go hand in hand. So the amended complaint fails to state a cause of action, in part because there is no—there is arbitral immunity. So to even get to that point, the complaint fails to state a cause of action. And then, of course, as the Honor has pointed out already, he's essentially challenging the arbitration award based on state law, which should not have been before this court to begin with. This should have been a challenge to the arbitration award initially. I'm not sure that responds to your question. Thank you. And just briefly with respect to the conspiracy claims, there is, in the amended complaint, there is really no alleged joint action between the Shineman defendants and the co-defendants at police. The complaint, the amended complaint, has these sort of general allegations, but really they pertain to the end result or the injury alleged as to the police. There's no real state action that has been cited to in the amended complaint. Again, rendering the complaint insufficient. And for this reason, we submit that the decision and judgment appeal should be affirmed. All right. Thank you very much, Ms. Medina. And now we'll hear from Mr. DeChiara. I'm not sure he'll tell me. For one minute, you're going to have to talk fast. Tell us how to pronounce your last name first. Peter DeChiara. DeChiara. All right. Mr. DeChiara, you may proceed. Good morning, Your Honors. Peter DeChiara for the District Council 37 defendants. Your Honors, I have no affirmative argument to make. We would rest on our brief, but I'd be happy to entertain any questions the panel may have. Thank you. You came in under a minute. That's pretty good. Thank you, Mr. DeChiara. All right. Mr. Graff, you have five minutes of rebuttal. Thank you, Your Honors. First, with respect to one of the arguments made by the UFT, when the employees were applying for accommodations, while that process was going on, before the final determination, they were suspended without pay. So before they had their full due process, they were not receiving pay. And there were some city employees that were able to maintain pay and do a testing regimen. The school district did not have that. So for the period of time that the- If they prevailed in their arguments pre-deprivation, well, post-preliminary deprivation, but pre-deprivation, and they prevailed, why would that be easily remedied then? They get their money. It's a post-deprivation at that point for certain amounts of pay that have been withheld. But why isn't that sufficient under the circumstances? This is a tight time frame for justifiable reasons that's been pointed out by your adversary. It's because other city municipal employees did not face the same situation the school teachers did. Some, for example, there's a case where the police officers were able to test and work while their accommodation process was going through. Here, there was no test and work. Does that go back to what was decided at the arbitration? No, it goes through the process. It's the process that implemented the arbitration award. Right, and the process was what was the outcome of the arbitration award. The arbitration award said this is the amount of process you get, and that turned out to be different for the teachers than for other city employees, right? But this is the arbitral award, or am I confused? It is, but the arbitration award cut off pay to avoid- I understand that, and that's your challenge to the arbitration award, right? It's the challenge to the process by which the city implemented the COVID vaccine. No, but you're making a due process challenge basically after the arbitration award was issued. And so you've said all along you're not attacking the arbitration award. Correct. I'm sorry. Go ahead. No, go ahead. Once the arbitration award was awarded, then the city had to implement based upon the award. It's in that implementation that the due process rights were violated. In the sense that when employees applied for the accommodations, and was just religious or disability health reasons. Those are the two limited reasons. Once they applied, if they were awarded, then they were on leave with pay, or they had the accommodation. But if the accommodations were not granted or there was a delay in the process, they were still without pay. They were deprived of it, even while the process was going through. Wasn't there an appeal process as well if they lost? The appeal process was to Scheinman's group. Yeah. He's the one who did the award. Well, there is an appeals process also in Article 78 proceeding, right? Yes, but under the case law of this court, because there was a procedure in place. It wasn't a random employee who came up with this due process process. It was a procedure. And under the case laws from this court, included in Hellenic American Neighborhood Action Committee, the due process was due at the time, not post deprivation. Okay, but as far as your claim about the Scheinman group being the appeals body, so it's in the nature of a petition for rehearing, but it's to somebody else maybe in the Scheinman group. I don't know. I don't know the details of that. In the record, Scheinman was one of the arbitrators who oversaw it, and that goes to his arbitration immunity. He put himself back into the arbitration process. Included him and his companies. But you're asking for a change in the outcome of the award. You're not seeking money from him particularly at that point. Well, correct, but we're saying that it was all collusion between him and the Department of Education and Scheinman with the UFT and the CSA.  There's no other questions. Thank you, Your Honor, for your time. All right, thank you. We will reserve decision.